**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────

SHEILA G.,

                                        Plaintiff,

            v.

COMMISSIONER OF SOCIAL SECURITY,                    No. 5:19-CV-1298
                                                    (CFH)

                              Defendant.

─────────────────────────────────

**APPEARANCES:**                        **OF COUNSEL:**

Law Offices of Steven R. Dolson        STEVEN R. DOLSON, ESQ
126 North Salina Street, Suite 3B
Syracuse, New York, 13202
Attorney for plaintiff

Social Security Administration          LUIS PERE, ESQ.
J.F.K. Federal Building
15 New Sudbury Street, Room 625
Boston, Massachusetts 02203
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

        Plaintiff Sheila G.[2] brings this action pursuant to 43 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her application for disability insurance benefits.  See Dkt. No. 1 ("Compl.").

─────────────────────

[1]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 7.

[2]  In accordance with guidance from the Committee on Court Administration and Case Management of
the Judicial Conference of the United States, which was adopted by the Northern District of New York in
2018 to better protect personal and medical information of non-governmental parties, this Memorandum-
Decision and Order will identify plaintiff by first name and last initial.

Plaintiff moves for reversal and remand for further administrative proceedings, <u>see</u> Dkt. No. 9, and the Commissioner cross moves for a judgment on the pleadings. <u>See</u> Dkt. No. 11. For the following reasons, the Commissioner's determination is affirmed.

## I. Background

On June 29, 2016, plaintiff protectively filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income. <u>See</u> T. at 15; 139-142; 143-48.[3] In both applications, plaintiff alleged a disability onset date of August 28, 2015. <u>See id.</u> at 139, 143. The Social Security Administration denied both claims on September 27, 2016. <u>See id.</u> at 71. Plaintiff requested a hearing, <u>see id.</u> at 77-78, and a hearing was held on September 17, 2018, in Syracuse, New York, before Administrative Law Judge ("ALJ") Kenneth Theurer. <u>See id.</u> at 30-54. On October 5, 2018, the ALJ issued an unfavorable decision. <u>See id.</u> at 24. On September 23, 2019, the Appeals Council denied plaintiff's request for review of the ALJ's decision. <u>See id.</u> at 1. Plaintiff commenced this action on October 21, 2019. <u>See</u> Compl.

## II. Applicable Law

### A. Scope of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. <u>See</u> 42 U.S.C. §§ 405(g), 1388(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir.

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. <u>See</u> Dkt. No. 8. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would *have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

**B. Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . .

benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable

impairment is an affliction that is so severe that it renders an individual unable to

continue with his or her previous work or any other employment that may be available to

him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A).

Such an impairment must be supported by "medically acceptable clinical and laboratory

diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is

"based on objective medical facts, diagnoses[,] or medical opinions inferable from [the]

facts, subjective complaints of pain or disability, and educational background, age, and

work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3

(S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.

1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. §

404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers
> whether the claimant has a "severe impairment" which
> significantly limits his [or her] physical or mental ability to do
> basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has
> an impairment which is listed in Appendix 1 of the
> regulations.  If the claimant has such an impairment, the

[Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since August 28, 2015, the alleged disability onset date. See T. at 17. At step two, the ALJ found that plaintiff had the following severe impairments: "a right hip impairment, a bilateral knee impairment, history of surgery to the right rib cage[,] and obesity." Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part

5

404, Subpart P, Appendix 1.  See id. at 19.  Before reaching step four, the ALJ

concluded that plaintiff retained the residual functional capacity ("RFC") "to perform light

work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is unable to climb

ladders/ropes/scaffolds, kneel or crawl; and she can only perform other postural

activities occasionally."  Id.  At step four, the ALJ determined that plaintiff is capable of

performing past relevant work as a food services manager, as that "work does not

require the performance of work-related activities precluded by [her RFC]."  Id. at 22.

Thus, the ALJ determined that plaintiff had not been under a disability, as defined in the

Social Security Act, since the alleged disability onset date.  See id. at 24.


### IV. The Parties' Arguments[4]

Plaintiff's sole argument is that the ALJ committed reversable error by failing to

apply the treating physician rule in affording "little weight" to the medical opinion of Dr.

Elizabeth Reddy ("Dr. Ready"),[5] a physician in the Immune Health Services Hospital at

Upstate University Health System ("Upstate").  Dkt. No. 9 at 5 (quoting T. at 21).  In

particular, plaintiff avers that the ALJ did not provide good reasons for affording less

than full weight to her opinion, and that the ALJ committed procedural error by failing to

consider the factors set forth in Burgess v. Astrue (537 F.3d 117 (2d Cir. 2008).  See id.

7-9.  Moreover, relying on Green-Younger v. Barnhart (335 F.3d 99 (2d Cir. 2003)),

plaintiff asserts that the ALJ erred in discounting Dr. Reddy's opinion on the basis that

---

[4]   The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF at the headers of the page, not to the pagination of the individual documents.

[5]   As the Commissioner points out, Dr. Ready's full last name is actually "Asiago-Reddy."  Dkt. No. 11 at 3 n. 1; T. at 292.  However, as the Commissioner acknowledged, because both the ALJ and plaintiff refer to her as "Dr. Reddy," and for the sake of consistency, the undersigned will do so as well.

she did not cite to any clinical findings or diagnostic testing records in support of her opinion, because "an opinion from a treating physician need not be based upon objective medical evidence, but can be based at least in part on subjective complaints." Dkt. No. 9 at 9.

The Commissioner argues that the treating physician rule does not apply to Dr. Reddy's opinion, and that the ALJ properly afforded her opinion little weight.  See Dkt. No. 11 at 3.  In particular, the Commissioner avers that "Dr. Reddy saw plaintiff only twice in the span of more than a year—first in January 2016 and then in April 2017—before completing her opinion" and, therefore, is not a treating physician.  Dkt. No. 11 at 3 (citing T. 292-94, 410-13).  Further, the Commissioner contends that the ALJ's decision to afford Dr. Reddy's opinion little weight is supported by substantial evidence, including the opinion of state consultative examiner, Kalyani Ganesh, M.D. ("Dr. Ganesh"), and plaintiff's medical records.  See 4-8.  The Commissioner also asserts that the ALJ correctly considered that Dr. Reddy did not cite any objective medical evidence in support of the "extreme limitations" contained in her opinion, and that plaintiff's reliance on Green-Younger is misplaced.  See id. at 6.  Alternatively, the Commissioner argues, even assuming arguendo that Dr. Reddy could be considered a treating source, the ALJ provided good reasons for affording her opinion little weight despite failing to explicitly consider the Burgess factors.  See id. at 9 n. 7.

**V. Relevant Opinion Evidence**

**1. Dr. Reddy and Nurse Practitioner Bartlett**

A July 31, 2017 evaluation of physical work limitations co-signed by nurse practitioner Linda Bartlett ("Bartlett"), a nurse practitioner at Upstate, and Dr. Reddy, diagnosed plaintiff with "[c]hronic kidney disease, chronic pain, w/o spleen injury/liver injury HIV + back + leg/hip s/p injury (MVA) R rib pain," and provided the following prognosis: "chronic illness."  T. at 403.  This evaluation covered plaintiff's treatment at Upstate between "12/2/15" and "8/7/17."  Id.  Bartlett and Dr. Reddy opined as to plaintiff's postural limitations, indicating that plaintiff could "[n]ever" climb, balance, stoop, crouch, kneel, or crawl; but could "[o]ccasionally (2-3 hrs/day)" climb stairs, reach, push, and pull.  Id.  Bartlett and Dr. Reddy opined as to the following exertional limitations: "Continuous standing[:] No—can stand 20-25 minutes at a time"; "Total standing during 8-hour day[:] two hours"; "Continuous walking[:] No"; "Total walking during 8-hour day[:] can walk a few minutes (<5 minutes) at a time then needs to rest"; "Continuous sitting[:] "prolonged sitting produces pain"; "Total sitting during 8-hour day[:] "1-2 hours at a time then needs to reposition."  Id. at 404.  Bartlett and Dr. Reddy also opined that plaintiff would be absent from work because of her "impairments or treatment," on average, "[m]ore than four days per month."  Id.  Moreover, Bartlett and Dr. Reddy opined that, "during a typical workday," plaintiff's "pain or other symptoms" would be "severe enough to [constantly] interfere with attention and concentration needed to perform even simple tasks," and added that "patient states her pain is 'constant.'"  Id.  In addition, Bartlett and Dr. Reddy stated that plaintiff "[s]hould" use a cane with "occasional walking/standing."  Id. at 405.  Finally, Bartlett and Dr. Reddy opined that, if plaintiff was employed, they would "recommend limiting the number of

hours per day or days per week [that she] should work," and provided that plaintiff "would find it difficult in most settings to work in light of her constant pain."  Id.

### 2. Dr. Ganesh

Dr. Ganesh examined plaintiff on September 12, 2016, and provided the following medical source statement: "No gross physical limitations noted."  T. at 363.  As relevant here, Dr. Ganesh's orthopedic examination notes state that plaintiff explained that "she was told that she has arthritis in the right hip.  She said they gave her a cortisone injection about a month ago, which has helped.  Before that, it was a constant aching pain.  At this time, it seems to be better."  Id. at 361.  Dr. Ganesh also observed that plaintiff "presents with a cane, which was given to her by her mother just today[,]" and stated that the cane "does not appear necessary."  Id. at 361, 362.  Dr. Ganesh noted that plaintiff is able to "cook, clean, shop, child care, shower, and dress," and that plaintiff "[n]eeded no help changing for the exam or getting on and off [the] exam table" and was "[a]ble to rise from chair without difficulty."  Id. at 361, 362.  Dr. Ganesh also noted that plaintiff "appeared to be in no acute distress[,]" had a "normal" gait and station, could walk on her heels and toes, but could not squat.  Id.  Further, Dr. Ganesh found that plaintiff had full flexion, extension and rotary movements bilaterally in her cervical, thoracic, and lumbar spines, as well as full range of motion ("ROM") and full strength (5/5) in her upper and lower extremities.  See id. at 362, 363.  Moreover, as relevant here, Dr. Ganesh provided the following diagnosis: "[a]rthritis right hip."  Id. at 363.

### 3. Dr. Noia

Dr. Noia, a state psychologist, also examined plaintiff on September 12, 2016, and diagnoses her with "[u]nspecified depressive disorder." T. at 359. As relevant here, Dr. Noia opined that plaintiff had no limitations in "understanding and following simple instructions and directions"; "performing simple" or "complex tasks"; ability to attend to a routine and maintain a schedule"; "ability to learn new tasks"; "make appropriate decisions"; "her ability to deal with stress with medication"; and that plaintiff "appears to be able to relate to and interact well with others"; and "appears to be intellectually capable of managing money." Id. at 358-59. Dr. Noia further opined that plaintiff "appears to have mild limitations maintaining attention and concentration for tasks," but indicated that "the examination appears to be consistent with psychiatric problems, [the] symptoms [of which] are controlled with medication." Id. at 359. Therefore, Dr. Noia "recommended that [plaintiff] continue with pharmacological treatment as currently provided." Id.

### VI. Analysis

### 1. Dr. Reddy Was Not a "Treating Source"

The Court first concludes that the treating physician rule does not apply to Dr. Reddy's opinion. See T. at 21; Dkt. No. 11 at 3. The regulations provide, in relevant part, that a

> Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence

> establishes that you see, or have seen, the source with a
> frequency consistent with accepted medical practice for the
> type of treatment and/or evaluation required for your medical
> condition(s).  We may consider an acceptable medical
> source who has treated or evaluated you only a few times or
> only after long intervals (e.g., twice a year) to be your
> treating source if the nature and frequency of the treatment
> or evaluation is typical for your condition(s).

20 C.F.R. § 404.1527(a)(2).  "'[A] treating source's opinion on the issue(s) of the nature

and severity of [a claimant's] impairment(s)' is given 'controlling weight' if the opinion is

'well supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence in [the] case record.'"  Petrie

v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) (summary order) (quoting 20 C.F.R. §§

404.1527(d)(2), 416.927(d)(2)).  The Second Circuit has explained that, "the opinion of

a treating physician is given extra weight because of h[er] unique position resulting from

the "*continuity* of treatment [s]he provides and the doctor/patient *relationship* [s]he

develops."  Petrie, 412 F. App'x at 405 (quoting Mongeur v. Heckler, 722 F.2d 1033,

1039 n. 2 (2d Cir. 1983) (emphasis added)).  However, a treating source's opinion will

not be afforded controlling weight if "the treating physician issued opinions that are not

consistent with other substantial evidence in the record, such as the opinions of other

medical experts."  Holloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curium).

"The report of a consultative physician may constitute such substantial evidence."

Petrie v. Astrue, 412 F. App'x 401, 405 (citation omitted); see Frey ex rel. A.O. v.

Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State

agency medical consultant constitutes expert opinion evidence which can be given

weight if supported by medical evidence in the record."); Little v. Colvin, No. 5:14-CV-

0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency

physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted and citations).

In Petrie, the Second Circuit upheld the ALJ's decision to give less than controlling weight to the opinions of two physicians who provided treatment to the plaintiff, reasoning, as relevant here, that "one of the physicians . . . had only examined [the plaintiff] once, while the [second] . . . had only four treatment notes bearing his signature, two of which were merely co-signatures on reports by other providers"; and both physician's opinions "were contradicted by [the opinions] of several medical experts[,]" including two consultative examiners whose opinions were consistent with the plaintiff's medical records.  Petrie, 412 F. App'x at 405, 406.  The Second Circuit explained that "a physician who only examined a claimant 'once or twice' did not see that claimant regularly and did not develop a physician/patient relationship with the claimant, even though other practitioners in the same facility had also submitted medical opinions on behalf of the claimant" and, therefore, the opinion of such a physician was not entitled to the presumption of controlling weight under the treating physician rule. Id. at 405 (quoting Mongeur, 722 F.2d at 1035, 1039 n. 2) (internal quotation marks and citations omitted).

Here, as an initial matter, the document plaintiff refers to as Dr. Reddy's opinion is co-signed—and appears to have been completed by—Bartlett.  See T. at 403. Indeed, the cover page of that document explicitly states: "FROM: Upstate University Hospital-Linda Bartlett, NP."  Id.  Although "medical source statements cosigned by a treating physician should be evaluated as having been the treating physician's opinion,"

King v. Comm'r of Soc. Sec., 350 F. Supp. 3d 277, 282 (W.D.N.Y. 2018) (internal quotation marks and citation omitted), as the Commissioner avers, Dr. Reddy was not plaintiff's treating physician.  See Dkt. No. 11 at 3.  First, as the Commissioner observes, Dr. Reddy examined plaintiff only twice over a period of approximately a year and three months—once on January 4, 2016, and once more on April 11, 2017.  See Dkt. No. 11 at 3 (citing T. at 292-94, 410-13).  Further, as Dr. Reddy's treatment notes make clear, she saw plaintiff for routine follow-up observation for the primary purpose of monitoring and assessing plaintiff's HIV and kidney issues—a service provided by numerous other healthcare providers at Upstate between December 1, 2015, and November 3, 2017, including Linda Bartlett, N.P.; Shraddha Ranna, M.B.B.S.; Dana Bulger, M.A.; Zachary Jones, M.D.; and Valina G. Gosine, M.D.  See T. 332, 292-91, 295-98, 299, 315, 410-11, 416-17, 426, 427.  Indeed, Dr. Reddy's January 4, 2016 progress note indicates that plaintiff's "Chief Complaint" was listed as "present[ing] with HIV Positive/AIDS," and that plaintiff's stated purpose of the visit was to follow up regarding her kidney disease.  Id. at 292.  Dr. Reddy's April 11, 2017 progress note also states that plaintiff was at Upstate for a "routine HIV clinic follow-up."  Id. at 410 (capitalization omitted).

Moreover, as the record makes clear, plaintiff attended more frequent follow-up visits for her HIV and kidney disease than her two visits with Dr. Reddy—which establishes that plaintiff's two visits with Dr. Reddy over a period of more than one year were far less frequent than that "consistent with accepted medical practice for the type of treatment and/or evaluation required for [plaintiff's] medical condition(s)" of HIV and kidney disease.  20 C.F.R. § 404.1527(a)(2).  In particular, Dr. Reddy's January 4, 2016

13

treatment note provided that plaintiff was scheduled for a "[t]entative follow up with [Upstate] in 4 months," and plaintiff's treatment notes from Upstate indicate that, in fact, she was seen for regular follow-up appointments for her HIV and kidney disease at approximately two- to four-month intervals—which is much more frequent than her visits with Dr. Reddy.  See T. at 332 (Dec. 1, 2015), 292 (Dr. Reddy's Jan. 4, 2016 treatment note: "chief complaint: patient presents with HIV Positive/AIDS"; "follow up with nephrology"); id. at 300 (May 11, 2016 progress note authored by Dr. Gilbert at Upstate regarding renal/HIV treatment); id. at 300 (May 12, 2016 Upstate Nephrology progress notes Dr. Gilbert's indicating that plaintiff was advised to return to Upstate at two-month intervals for her renal issues, stating that, "[d]uring [plaintiff's] last visit 12/23/15, it was recommended that she follow up in 2 months however in the interim, she has cancelled and rescheduled several appointments . . . ."); T. 308-312 (Aug. 2, 2016 Upstate Nephrology progress note authored by Shraddha Rana, M.B.B.S. scheduling a return to clinic in two months); id. at 375 (Oct. 25, 2016, Upstate Neprhology progress notes authored by Shraddha Rana, M.B.B.S., scheduling return to return to clinic in three months); id. at 387 (Feb. 14, 2017 Upstate Nephrology progress note authored by Shraddha Rana, M.B.B.S, scheduling return visit in "4-5 months,").  Thus, as the record makes clear, Dr. Reddy treated plaintiff on only two occasions for follow-up visits relating to her HIV/kidney disease—a frequency well below that which the uncontroverted medical evidence indicates was customary for such treatment, and, as discussed above, was also provided by numerous other healthcare professionals at Upstate.  Consequently, the Court concludes that Dr. Reddy was not a treating source

and that the ALJ did not commit error in declining to apply the treating physician rule in deciding how much weight to afford her opinion.  See Petrie, 412 F. App'x at 405, 406.

### 2. The ALJ's Decision to Afford Little Weight to Dr. Reddy's Opinion is Supported by Substantial Evidence

As relevant here, the ALJ provided the following reasoning for affording little weight to Dr. Reddy's opinion:

> First Dr. Reddy cited kidney issues and HIV in support of her opinion.  However, the record has indicated, and the claimant concurs, that these issues do not significantly limit her.  Second, Dr. Reddy did not cite to any clinical findings or diagnostic testing in the record.  Third she did not explain this opinion in light of the claimant's very conservative course of treatment.

T. at 20.  As the ALJ noted, see id. at 21, plaintiff's progress notes from Upstate, including both of Dr. Reddy's notes, clearly indicate that plaintiff's HIV and kidney issues are well controlled by treatment and medication.  See T. 332 (Bartlett's Dec. 1, 2015 progress note: "Since initiating ART she has been very adherent to her medications and has a consistently undetectable viral load"; "viral load was un-detected on 10/5/15"); id. at 294 (Dr. Reddy's Jan. 4, 2016 progress note: "HIV: On PI monotherapy, tolerating it well."); id. at 297-98 (Bartlett's April 7, 2016 progress note: "HIV: stable, on HAART, and appears that she has remained adherent to therapy with her medications"; "Renal disease: Managed by nephrology."); id. at 299 (Theresa Feola, N.P.'s April 18, 2016 progress note: "HIV-1 RNA not detected 04/07/2016"); id. at 312 (Bartlett's Aug. 15, 2016 progress note: "HIV: stable, on HAART"); id. at 410 ("Dr. Reddy's Apr. 11, 2017 progress note: "Her kidney function at last check was improved.  She remained virologically suppressed."); id. at 417 (Dr. Jones Dec. 7, 2017 progress note indicating

that plaintiff's HIV and renal issues were stable with medication and treatment); id. at 426 (Valini Gosine, M.D.'s Sept. 1, 2017 progress note: "HIV well suppressed on HAART.").  Further, plaintiff did not testify at the hearing before the ALJ, and does not argue now, that her HIV or renal issues affect her ability to work and, instead, focuses entirely on her hip and knee pain in that regard.  See id. at 38-41.  Moreover, although plaintiff's initial Upstate treatment note suggested that plaintiff's "[l]ower extremity swelling" was "[p]ossibly renal related," id. at 327, Bartlett's April 7, 2016 treatment note indicated, with respect to plaintiff's "[r]ight knee pain and swelling[,]" the "[s]welling appear[ed] to be more localized to her right knee and therefore less likely to be renal etiology more ortho."  Id. at 298.  However, it is undisputed that plaintiff never visited an orthopedic physician concerning her leg pain,  see Dkt. No. 9 at 7 (citing T. at 385 (medical record dated Jan. 19, 2017, authored by David Martin, M.D., stating that, although plaintiff "[d]oes complaint of some increased leg pain," she "[w]as never seen by . . . [an] orthopedist for this.").  Moreover, the record makes clear that plaintiff was placed on a conservative course of treatment for her pain that included pain medication and a single hip injection, which, according to her medical records, alleviated her pain.  See T. 317, 394, 441.  Plaintiff was also referred to physical therapy ("PT") in February 2017, but was discharged in March 2017, after attending only her "initial evaluation" due to "insurance problems," and the record does not indicate that she ever returned to PT.  Id. at 399.  In addition, to the extent that Bartlett and Dr. Reddy opined that plaintiff's right hip and knee pain are the result an incident in 2015 in which her ex-boyfriend purposefully hit her with a motor vehicle, the medical evidence of record does not indicate that plaintiff suffered a hip and/or knee injuries as a result thereof.  See id. at

287 (Dr. Martin's Feb. 15, 2016 treatment note, explaining that plaintiff suffered a "right thorax fracture," "[l]aceration of her liver and spleen," and injuries to her abdominal area as a result of the 2015 motor vehicle incident).

Further, Dr. Reddy's opinion as to the severity, persistence, and limiting effects of plaintiff's symptoms, insofar as they can be read as relating to her hip/knee pain, is contradicted by plaintiff's medical records—including Dr. Reddy's two progress notes— which indicate that plaintiff's pain and/or swelling was either improving or non-apparent. See T. at 292, 410.  In particular, at plaintiff's first visit with Bartlett at Upstate in December 2015, Bartlett observed "[l]ower extremity swelling[.]"  T. at 332.  However, Dr. Reddy's Jan. 4, 2016 progress note, which listed plaintiff's "Chief Complaint" as "Patient presents with HIV Positive/AIDS," noted that plaintiff's "[l]eg swelling [had] overall improved."  Id. at 292.  Bartlett's April 7, 2016 progress note stated that plaintiff had "residual ortho pain, particular in her right knee.  Her bilateral leg swelling has completely resolved except for some fluid around that knee."  Id. at 295.  In May 2016, plaintiff informed William Linksy, N.P. at Upstate that her "right leg hurt [and had been] swollen," for two days, but listed the "[s]everity" as "moderate."  Id. at 304.  Moreover, plaintiff's August 2, 2016 progress note authored by Shraddha Rana, M.B.B.S. indicated that plaintiff stated that "she plan[ned] to get a cortisone injection" in her right hip for "pain which apparently has been ongoing for some time now," id. at 308, and her August 3, 2016 Upstate records establish that she received a "Right Hip Injection Under Fluoroscopic Guidance."  Id. at 317.  In addition, Bartlett's August 15, 2016 progress note stated that plaintiff's "[c]hronic right hip and right knee pain" were "[m]anaged by her" primary care physician and that she had "[r]ecent[ly received a hip injection for

17

pain." Id. at 316.  In addition, Dr. Ganesh's September 12, 2016 physical exam findings indicated that plaintiff informed Dr. Ganesh that the cortisone injection alleviated her right hip pain.  See id. at 361.  Finally, Dr. Reddy's April 2017 progress note stated that plaintiff had "no obvious swelling."  Id. at 410.

Moreover, the ALJ explicitly considered David Martin, M.D.'s ("Dr. Martin") progress notes.[6]  See id. at 21.  In January 2017, Dr. Martin noted that plaintiff was "[f]eeling generally well," but had "some increased leg pain"; that she was "walk[ing] with a cane"; and that plaintiff's "[s]trength in right leg [wa]s approx. 3 out of 5" with "full ROM with the leg but is stiff and causes some pain."  Id. at 385.  Dr. Martin indicated that he "fe[lt] that he pain [wa]s more that likely coming from some low back issues" and recommended physical therapy.  Id.  However, as with her Upstate records, Dr. Martin's records from October 2017 indicate improvement, stating that she "ha[d] 5+ strength in bilateral lower extremities," id. at 384 (Oct. 4, 2016), and that "visualization of the right lower back and right hip d[id] not reveal any acute concerns[, as t]here [wa]s no protrusions or deformities or anomalies[;] no redness . . . [; and] [s]he [wa]s not overly tender on deep palpitation of the right lumbar spine, right iliac or in the right posterior thigh."  Id. at 407 (Oct. 19, 2017).  Furthermore, in July 2017, although plaintiff expressed "concern" to Dr. Martin that "her pain [wa]s starting to increase and extend from her low back into her upper intergluteal folds," "[s]he state[d] that she is doing very well with the Tramadol[7] but feels that an extra dosage once or twice a day might help

---

[6]  Neither plaintiff nor the record makes clear what Dr. Martin's treating relationship to plaintiff was.

[7]  Tramadol is an oral "opioid analgesic," which is "used to relieve moderate to moderately severe pain[.]" *Drugs and Supplements: Tramadol (Oral Route)*, MAYO CLINIC, https://www.mayoclinic.org/drugs-supplements/tramadol-oral-route/description/drg-20068050 (last visited Mar. 3, 2021).

her," and observed that plaintiff was able to "move[] all extremities well w/o any signs of deficiencies."  Id. at 407.  In addition, as the ALJ pointed out, see id. at 20, the portion of Dr. Reddy's opinion indicating that plaintiff requires the use of cane is not supported by substantial evidence, and is directly contradicted by plaintiff's hearing testimony in which she expressly stated that the cane she uses is "not" "prescribed by a doctor," id. at 47, and Dr. Ganesh's exam findings which indicate that plaintiff's mother gave her the cane on the day of the exam.  See id. at 361-62.  Indeed, as the ALJ observed, plaintiff was prescribed a cane when she had a foot fracture in 2015, but the record is devoid of evidence to establish that a cane was required for her right hip and/or knee issues or that use of the cane was necessary any time thereafter.  See id. at 21, 284.

Further, Dr. Reddy's opinion, insofar as it indicates that plaintiff would be off task "constantly" and absent "[m]ore than four days per month" due to pain is contradicted by plaintiff's medical records.  Id. at 405.  For instance, Dr. Martin's progress July 2017 indicate that plaintiff is doing "very well" on her medication, id. at 407, and plaintiff's Upstate records that indicate that plaintiff described her right leg pain as being "moderate" in "[s]everity"—prior to receiving her right hip injection, id. at 304—which the record indicates alleviated her right hip pain.  See id. at 361.  Dr. Reddy's opinion in this regard is also contradicted by Dr. Noia's opinion, which indicated only mild limitations in plaintiff's ability to maintain attention and concentration for performing tasks, which were controlled by medication.  See id. at 358.  Thus, a careful review of plaintiff's medical records make clear that the pain plaintiff experienced in her right hip and knees generally improved between 2015 and 2017 and/or was controlled through the use of pain medication and a single cortisone injection.

Finally, the Commissioner correctly contends that plaintiff's reliance on <u>Green-Younger</u> for the proposition that the ALJ erred by considering that Dr. Reddy had not relied on objective medical evidence in weighing her opinion is misplaced.  <u>See</u> Dkt. No. 11 at 6-7.  As the Commissioner aptly points out, plaintiff has misconstrued <u>Green-Younger</u>, which held that "the ALJ erred by failing to give controlling weight to the treating physician's opinion and effectively requireing objective evidence beyond the clinical findings necessary for a diagnosis of <u>fibromyalgia</u> . . .[,]" reasoning that "there are no objective tests which conclusively confirm [fibromyalgia]."  335 F.3d at 106, 108 (emphasis added).  Unlike <u>Green-Younger</u>, plaintiff's alleged limitations are not premised on a diagnosis of fibromyalgia; therefore, it was not error for the ALJ to afford little weight to Dr. Reddy's opinion concerning plaintiff's limitations—which were based exclusively on plaintiff's subjective complaints.  <u>See</u> T. at 403-05.  In any event, as the foregoing analysis makes clear, plaintiff's subjective complaints concerning the persistence, intensity, and limiting effect of her pain are unsupported by her medical records—which establish only generalized complaints of pain, including statements such as, "[m]y right leg is hurt and swollen," and describe her pain as being at a "[s]everity [level of] moderate," T. at 304; show general improvement in pain and swelling between 2015 and 2017, <u>see id.</u> at 295, 322, 410; and evidence normal gait, without any mention of functional limitations.  <u>See id.</u> at 422.

An ALJ "is entitled to rely not only on what the record says, but also on what it does not say."  <u>Dawn P. v. Berryhill</u>, No. 6:17-CV-1265 (DJS), 2019 WL 1024279, at *6 (N.D.N.Y. Mar. 4, 2019) (internal quotation marks and citation omitted).  Indeed, "[i]t is well established that the ALJ may properly consider the fact that treatment notes fail to

reference functional limitations in evaluating the weight of medical opinions."  Id.  Here, the ALJ correctly considered the lack of functional limitations expressed in plaintiff's medical records, including in her Upstate treatment notes and Dr. Martin's progress notes, as well as the absence of clinical testing or diagnostic testing, such as CT scan, MRI, or x-rays, in concluding that the severe functional limitations opined to by Dr. Reddy were not supported by substantial record evidence.  See T. at 21; Dawn P., 2019 WL 1024279, at *6.  Consequently, the Court concludes that the ALJ properly considered the lack of reference to functional limitations in plaintiff's treatment notes, particularly given the absence of any objective evidence in support of Dr. Reddy's opinion.  See Dawn, 2019 WL 1024279, at *6 (holding that the ALJ's properly considered the absence of reference to functional limitations in plaintiff's treatment notes was "particularly appropriate . . . given . . . the lack of objective evidence to support the limitations on [the plaintiff's] abilities" and the "absence of stated limitations despite . . . extensive treatment of [the p]laintiff.").  Thus, as the Commissioner argues, plaintiff's reliance on Green-Younger is misplaced, and the ALJ's decision to afford her opinion little weight is supported by substantial evidence, which the ALJ properly cited and explained in reaching his conclusion as to the weight to be afforded to her opinion.

## VII. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that plaintiff's motion (Dkt. No. 9) is **DENIED** and it is further

**ORDERED**, that the Commissioner's motion (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 17, 2021
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge